Inhabitants of Livermore *versus* Inhabitants of Phillips.

By an Act of 1842, a part of the town of Berlin was annexed to the town of Phillips, and as to the residue of Berlin, its incorporation was annulled.

This Act, so far as affects the settlement of persons who had resided in Berlin, is to be considered as a *division* of that town, and not merely as an *annexation* of a part of it.

On Report from *Nisi Prius,* Wells, J., presiding.

Assumpsit, for supporting an illegitimate pauper child whose mother, at the time of its birth, March 3, 1831, resided and had a legal settlement in the town of Berlin.

Livermore *v.* Phillips.

In the fall of the same year, the mother, with the child, removed to Phillips, and continued to reside there until 1847 or 1848.

By an Act of March 17, 1842, a portion of Berlin was "set off from Berlin and annexed to and made a part of the town of Phillips;" and as to the residue of Berlin, the Act of its incorporation was repealed. The town of Phillips was authorized, in the name of the town of Berlin, to collect all the taxes due to Berlin, and required to pay all the debts due from it, except one quarter of its State tax.

The last residence, which the pauper's mother had in Berlin, was in that part of it, which became a part of Phillips.

In 1847 or 1848, she and the pauper removed to Livermore, where they continued to reside, until the death of the latter in 1851. The pauper was never emancipated, but always lived with, and under control, of the mother.

The case was submitted to the Court for a legal decision.

*Walton,* for the plaintiffs.

Illegitimate children "follow and have the settlement of their mother at the time of their birth." The settlement of the pauper was, therefore, once in Berlin. The Act of 1842 *divided* the town of Berlin, and annexed to Phillips that part in which the pauper's settlement and last residence had been. That annexation fixed the settlement in Phillips. R. S. c. 32, § 1, 4th clause ; *Smithfield* v. *Belgrade,* 19 Maine, 387 ; *Belgrade* v. *Dearborn,* 21 Maine, 334. Otherwise she must have lost one settlement, without gaining another, which is a result unallowed by our laws. R. S. c. 32, § 2.

*May,* for the defendants.

1. The pauper, being illegitimate, follows and has the settlement of the mother. R. S. c. 32, § 1 and 2.

2. The mother had her settlement in Berlin. The pauper's settlement must be Berlin, unless she gained another in her own right, for she could gain no new one *derivatively* from the mother. *Sidney* v. *Winthrop,* 5 Maine, 123 ; *Biddeford* v. *Saco,* 7 Maine, 270 ; *Fayette* v. *Leeds,* 10 Maine, 409.

3. The pauper, being unemancipated, could gain no settlement in her own right. *Milo* v. *Kilmarnock*, 11 Maine, 455; *Fayette* v. *Leeds*, before cited.

4. By the statute of March 17, 1842, a part of Berlin was annexed to Phillips, and it was that part, on which the pauper and her mother had resided, but on which they did not reside at the time of the passage of said statute. This is the case of the *annexation* of a part of one town to another, and not the case of a *division* of a town ; and it has the same effect as the incorporation of a new town. Stat. of Mass. passed in 1793; R. S. c. 122, § 1 and 2; *Hallowell* v. *Bowdoinham*, 1 Maine, 129; *New Portland* v. *Rumford*, 13 Maine, 299; *New Portland* v. *New Vineyard*, 16 Maine, 69.

5. Such persons only as dwell and have their home on the territory annexed, *at the time of the annexation*, have their settlement transferred to the new town. Statutes before cited ; *Lexington* v. *Burlington*, 19 Pick. 426.

6. Neither annexation or incorporation will have any effect in changing the settlement of a pauper, who is incapable of gaining a settlement in his own right. *Milo* v. *Kilmarnock*, 11 Maine, 455, before cited.

7. The pauper in this case, then, stands in the same position as if the Act incorporating Berlin had been repealed, without any provision being made as to the settlement of its paupers.

8. The cases, *Smithfield* v. *Belgrade*, and *Belgrade* v. *Dearborn*, cited by the plaintiffs, when rightly considered, do not conflict with these positions, while these positions are fortified and strengthened by the cases of *Groton* v. *Shirley*, 7 Mass. 156; *Great Barrington* v. *Lancaster*, 14 Mass. 253; *Fitchburg* v. *Westminster*, 1 Pick. 144; *Sutton* v. *Dana*, 4 Mass. 117.

SHEPLEY, C. J. — Whether the pauper had a legal settlement in the town of Phillips must depend upon the construction of the Act approved on March 17, 1842, by which the former town of Berlin was annihilated without any provision made for the future support of its paupers.

If the former town of Berlin be considered as divided, as well as annihilated by the Act, the settlement of the pauper was thereby transferred to the town of Phillips, by the first clause of the statute, c. 32, § 1, mode 4. If it be not considered as divided, and that part of it united with the town of Phillips be regarded as an "annexation" to that town in the sense, in which that term appears to have been used in the decided cases, the settlement of the pauper will not have been thereby transferred to the town of Phillips. It may not be easy to reconcile all the cases, which speak of "division" and "annexation" with reference to the settlement of paupers. And it may be difficult to approve of all the *dicta* contained in them.

No statute has in terms provided, that a settlement may be gained by the annexation of part of one town to another. There has long existed a provision, that when a new town was incorporated, composed of one or more old towns, the persons having a legal settlement in the old towns and resident in the new at the time of its incorporation, should have settlement in the new town.

In the case of *Groton* v. *Shirley*, 7 Mass. 156, it was decided, that the annexation of a part of one town to another should have the effect of an incorporation of a new town, upon the settlement of the persons then resident upon the part annexed, and having a legal settlement in the town from which it was taken.

This rule of construction has been continued. *Fitchburg* v. *Westminster*, 1 Pick. 144; *Hallowell* v. *Bowdoinham*, 1 Greenl. 129; *New Portland* v. *Rumford*, 13 Maine, 299; *New Portland* v. *New Vineyard*, 16 Maine, 69. To annex is to unite one thing to another. There is no reference made to any effect, which might thereby be produced upon that, with which the thing united might have been before connected. But the word "annexation" appears to have been used in the legal sense, and in the decided cases to designate the act of separating a part of a town from it and uniting it with another

town.   No case has been noticed in which the term was used as one of importance, where it did not appear, that the town, from which the part annexed was taken, was left as an existing corporation.    If this be the sense in which the term annexation has been used, the facts reported in this case do not exhibit an act of annexation in the legal sense ; for no corporation was left, from which part of Berlin was taken and united to Phillips.

It is doubtful, whether the definition of the phrase used in the statute, " upon the division of any town," intimated in the case of *Hallowell* v. *Bowdoinham*, will prove to be entirely satisfactory.    It is there said, that it "seems to have in view such a division of a town as shall produce two or more towns composed of the same territory, which formed the original town."

" Division" is the separation of any entire body into parts. It does not include the idea of preservation of any previous organization, form or shape.    There is no indication, that the word was used in the statute in any unusual or technical sense.    If a town should by Act of the Legislature be separated into two or more parts and those parts should be incorporated, or without it, organized into plantations, the Act incorporating the town being repealed or annihilated, would the town be divided ?    If one part were incorporated into a plantation and the others were left without it, would there be no division ?    Would it be necessary, that the two or more parts should either have any political organization if their respective parts were otherwise designated ?    If not, can it be incorrect to speak of a town as divided, when it has been separated into two parts, because one of them was left without organization and the other was united to another town ?    In such cases there might be difficulty with respect to the settlement of those persons not included in any new or other town ; but would that be sufficient to determine, that the town was not divided in the sense of the statute ?

The Act of March 17, 1842, does not seem to exhibit the

aspect of an Act providing for the separation of a part of a town and the annexation of it to another town.

The town of Berlin appears to have been divided or separated into two parts. One of these parts was left without any organization. The other, which appears to have included all the settled part, was united to the town of Phillips, which was authorized to collect all the taxes due to the former town of Berlin and required to pay all the debts due from it, except one fourth part of the State tax, which was left to be paid by the remaining part of Berlin.

The use of the phrase, "and annexed to and made part of the town of Phillips," cannot control the construction of the Act; for all parts of it, and all its provisions are to be examined to ascertain its true character and the intention of the Legislature. So completely absorbed was all the settled part of Berlin in the town of Phillips, that the latter was authorized to use the corporate name of the former to collect all debts due or to become due to the town of Berlin. Such "annexations" as this are not unfamiliar to the ear, but they do not appear to be of that character, which by judicial construction have been considered to have on the settlement of paupers the like effect as the incorporation of a new town.

*Defendants defaulted.*

TENNEY, WELLS, HOWARD and APPLETON, J. J., concurred.